IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────────────────

KELSEY NELSON,

                Plaintiff,                  OPINION & ORDER

  v.

                                              12-cv-573-wmc

CAPTAIN FRANSON, JESSE WITTENBURG
and CHRIS REITZ,

                Defendants.
───────────────────────────────────────────────────────────

      Plaintiff Kelsey Nelson brings this civil action alleging that: (1) defendants Jesse Wittenburg and Chris Reitz were deliberately indifferent to his medical needs in violation of the Eighth Amendment; and (2) defendant Brian Franson deprived him of the right to call witnesses during a disciplinary hearing on a conduct report he received.[1]  Defendants subsequently moved for summary judgment for failure to exhaust administrative remedies. (Dkt. #23.)  Because defendants have now established as a matter of undisputed facts that Nelson failed to exhaust, the court will dismiss both of his claims without prejudice.

BACKGROUND

      On April 1, 2012, Nelson alleges that he was having suicidal thoughts.  Nelson told Wittenburg and Reitz that he was going to kill himself and that he had not been given his medication.  Nelson also asked to speak with a clinical services staff member.  Both

---

[1] Nelson also previously filed a motion for leave to amend (dkt. #21) and an amended complaint (dkt. #20), which names the John and Jane Doe defendants as Wittenburg and McNamara, respectively, as contemplated by the court's screening order and amended in the caption above. (*See* Jan. 2, 2014 Opinion & Order (dkt. #9).)  However, that amended complaint continues to assert claims against Kent McNamara, who allegedly wrote a conduct report arising out of Nelson's alleged mental breakdown.  Because Nelson was not granted leave to proceed on those claims (*id.*), his motion to amend is denied with respect to the claims against McNamara, and granted in all other respects.

Wittenburg and Reitz are alleged not only to have ignored him, but also to have actually drowned out his pleas for help by turning up the volume on the radio above his cell. At 4:00 p.m., Nelson covered his cell window, tied a sheet around his neck and attempted to kill himself. He was rescued by an unnamed staff member and placed on observation status.

McNamara wrote Nelson up in a conduct report based on his alleged actions during and immediately following the suicide attempt, accusing Nelson of disruptive behavior, disobedience of orders, and passive resistance of officers. Nelson alleges that Captain Franson was denied him the right to call witnesses at the subsequent disciplinary hearing.

## FACTS

**I. Grievance**

There is only one grievance at issue in this case: Inmate Complaint No. CCI-2012-10910, which Nelson filed on May 24, 2012, and the Institution Complaint Examiner ("ICE") received on May 25, 2012. In that complaint, Nelson states:

> I filed this ICE on the above date cause I was given a ticket (#2207130) and convicted on it, it was based upon me having a psychological mental[] break down by trying to commit suicide.
>
> On the date of the situation I was feeling down, sad, depressed and having thoughts of not wanting to[] live, it was brought to[] the staff's . . . attention a [number] of times that it was very important that I spoke with some one A.S.A.P. Weeks before that I've tried to commit suicide and nothing was done until they found me each time with a bed sheet tied around my neck cause I didn't want to live and now I'm being punished for having a psychological mental[] break down when I should not be.

(Welcome Rose Aff. Ex. (dkt. #25-1) 1.)

2

On June 8, 2012, the ICE, Joanne Lane, rejected Nelson's complaint as outside the scope of the Inmate Complaint Review System ("ICRS") pursuant to Wis. Adm. Code § DOC 310.11(5)(h) and Wis. Adm. Code § DOC 310.08(2)(a), because it raised an issue related to a conduct report. Nelson appealed. His appeal was received on June 20, 2012. On June 29, 2012, Michael Meisner affirmed the rejection.

**II. Disciplinary Hearing**

Because he received a conduct report for disobeying orders and disruptive conduct as a result of the same incident, Nelson was also granted a disciplinary hearing on April 26, 2012. (*See* Nancy Nehring Aff. Ex. (dkt. #26-1) 5.) The record of that hearing indicates that Nelson waived his full due process rights. (*See id.*) At the hearing, Nelson's statement was recorded as follows:

> I didn't cover or yell. It was a sheet on my neck. They never told me to come to the door. I was gone (dead) and they had to bring me back (revive). I had asked for help before. The ticket shouldn't have been written. I was trying to kill myself and they brought me back.

(*Id.*) While Nelson was adjudged guilty of disobeying orders and sentenced to 90 days in disciplinary segregation, he was found not guilty of disruptive conduct.

Nelson appealed the hearing officer's decision on May 1, 2012. Nelson argued that he was not in the "right mental state of mind" and could not be punished for having a psychotic break. (*Id.* at 6.) In the section labeled "Additional Relevant Information," he concluded:

> For the sake of justice I ask for this C.R. to be dismissed. This is the first step in exhausting my administrative remedies. . . The written staff had knowledge of my psychic break down but <u>did . . . nothing</u> about it.

3

(*Id.* (emphasis added).) According to the form, the Warden returned the case to the Hearing Officer for "further consideration and a final decision." (*Id.*) The record does not indicate what took place after the Warden's decision.

## OPINION

**I. Deliberate Indifference Claims**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In the Seventh Circuit, exhaustion of administrative remedies is a "condition precedent to suit." *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002); *see also Perez v. Wis. Dep't of Corr.*, 183 F.3d 532, 535 (7th Cir. 1999) (holding that where administrative remedies have not been exhausted, "the district court lacks discretion to resolve the claim on the merits").

The PLRA also requires "proper exhaustion; that is, the inmate must file a timely grievance utilizing the procedures and rules of the state's prison grievance process." *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011) (internal quotation marks omitted). Where a grievance is rejected on procedural grounds, rather than on the merits, the inmate has failed to exhaust. *See id.* at 722.

In Wisconsin, one such procedural reason for rejecting a grievance is scope. Specifically, under Wis. Admin. Code § DOC 310.08(2)(a), an inmate may not use the ICRS to raise "[a]ny issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303." This court has held that if an issue

4

"is related to a conduct report, the inmate must raise it at the time of his disciplinary hearing and again on appeal to the warden, assuming the matter is not resolved at the disciplinary hearing stage." *Lindell v. Frank*, No. 05 C 003 C, 2005 WL 2339145, at *1 (W.D. Wis. Sep. 23, 2005). This is consistent with Wis. Admin. Code § DOC 303.76(7)(a), which states that an inmate who is found guilty after a disciplinary hearing on a major violation may appeal the decision, the sentence or both to the warden within 10 days of the hearing or receiving a copy of the decision, whichever is later. After that appeal is complete, an inmate may use the ICRS only to appeal procedural errors. Wis. Admin. Code § DOC 303.76(7)(d); *see also id.* at § DOC 310.08(3).

With respect to Nelson's deliberate indifference claims, defendants rely entirely on Inmate Complaint No. CCI-2012-10910, apparently the only complaint he filed with respect to the events of April 1, 2012. They argue that while it mentions the incident, the issue Nelson actually raised was whether he should have received the conduct report *at all*, not whether he received inadequate or inappropriate medical care. Accordingly, defendants argue that Nelson failed to exhaust with respect to that claim, since he did not file a grievance that adequately apprised the state of the issue, so as to "provid[e] prison officials a fair opportunity to address his complaint." *Maddox*, 655 F.3d at 722.

Before turning to the substance of this argument, the cursory nature of defendants' submissions deserves at least a brief mention. With respect to the deliberate indifference claim, defendants' argument consists only of the black-letter legal standard for exhaustion and two sentences of perfunctory analysis. They do not apply the law to the facts; they do not address any of the nuances of Nelson's situation; and they do not cite to relevant authority. In fact, defendants have left it to the court to piece together arguments on their

5

behalf, failing even to direct the court to the proper points in the record to support their motion.

While defendants' skeletal submissions raise serious concerns, particularly given that failure to exhaust is an affirmative defense on which defendants bear the burden of proof, *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 2000), the court nevertheless agrees that Nelson failed to raise the issue of inadequate medical treatment in the one complaint on file. Nelson's grievance is directed not at the denial of medication or psychological counseling -- which is the focus of those claims on which Nelson was granted leave to proceed -- but instead on the fact that he was *punished*, via a disciplinary ticket and subsequent conviction, for his psychological breakdown.

While Nelson's grievance admittedly mentions that he brought his depression to the attention of staff members, his ultimate complaint, in his own words, is that he was "being punished for having a psychological mental[] break down, when [he] should not be." (Welcome Rose Aff. Ex. (dkt. #25-1) 1.) This is simply a different claim than the one now before this court.

Even if that grievance *had* adequately raised the issue of deliberate indifference, it still does not constitute exhaustion given its rejection on grounds of scope, rather than on the merits. As noted above, when an issue is related to a conduct report, an inmate may exhaust as to substance by raising the issue "at the time of his disciplinary hearing and again on appeal to the warden." *Lindell*, 2005 WL 2339145, at *1 (citing Wis. Adm. Code § DOC 303.76). Nelson's statement at his disciplinary hearing suffers from the same deficiency as the written grievance: he apparently stated that he had "asked for help before," but the substance of his defense was simply that: (1) he had not engaged in

6

disruptive conduct; (2) he was never ordered to come to the door of his cell; and (3) he should not have received a ticket based on his mental breakdown. At best, the record of his statement suggests only that he had *previously* asked for help -- not that defendants behaved with deliberate indifference to his medication and counseling needs at the time of the incident. While Nelson's subsequent appeal to the Warden arguably *does* raise the issue of deliberate indifference with enough specificity, his failure to raise it at the hearing itself first is fatal to his claims of administrative exhaustion. *Id*. Accordingly, the court will dismiss this claim without prejudice.

**II. Due Process Claim**

Defendants also argue that they are entitled to summary judgment for failure to exhaust on Nelson's claim that he was denied the right to call witnesses at his disciplinary hearing. Their "argument" on this point is a single sentence: "And the Affidavit of Nancy Nehring establishes that the plaintiff waived his right to call witnesses at his hearing on Conduct Report #2207130." (Defs.' Br. Supp. (dkt. #24) 3.) Electing not to call witnesses might well constitute waiver (assuming it was not coerced as Nelson seems to assert), but has little or nothing to do with exhaustion. Nor do defendants offer further analysis or citations to the contrary.

Even so, Welcome Rose's affidavit establishes that Nelson filed *no* inmate complaints contending that Franson denied him the right to call witnesses at his hearing. (*See* Welcome Rose Aff. (dkt. #25) ¶¶ 4-5.) Nelson appears to conceded this point. Since this fact does constitute a failure to exhaust, the court will dismiss this claim without prejudice as well.

ORDER

IT IS ORDERED that:

1) Plaintiff Kelsey Nelson's motion to amend his complaint (dkt. #21) is GRANTED IN PART and DENIED IN PART as set forth above.

2) Defendants' motion for summary judgment for failure to exhaust (dkt. #23) is GRANTED. Nelson's claims are dismissed without prejudice.

3) The clerk of court is directed to enter judgment and close this case.

Entered this 10th day of December, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge